MYRON ADAMS *v.* DELVINA LANDRY.

HAZEL ADAMS *v.* SAME.

DELVINA LANDRY *v.* MYRON ADAMS.

ALFRED LANDRY (two actions) *v.* SAME.

*Sulloway, Piper, Jones, Hollis & Godfrey (Mr. Jones* orally), for Myron and Hazel Adams.

*John F. Beamis, Jr.* and *Fortunat A. Normandin (Mr. Normandin* orally), for Delvina and Alfred Landry.

MARBLE, C. J. Sections 7 and 8 of chapter 107 of the Revised Laws conferring on the Highway Commissioner certain duties relating to stop signs and the control of traffic constitute a valid delegation of legislative power. *State* v. *Langley,* 92 N. H. 136, 138. The regulation governing traffic at the intersection of Madbury Road and the state highway, as promulgated by the Highway Commissioner, is as follows: "All traffic approaching said state highway at the above named intersection shall first come to a full stop . . . and shall yield the right of way to vehicles traveling on said state highway."

It could be found on the evidence that Mrs. Landry brought her car to a full stop at a point some 35 feet east of the intersection and about 50 feet east of the point where the collision occurred; that she looked to her right while her car was stationary but did not look in that direction again. There was testimony to the effect that if a car

was stopped directly at the stop sign the driver's view to the north would be somewhat obstructed by a building and trees. "At the approximate angle of the intersection," however, the view to the north "was in the neighborhood of 400 feet."

Mrs. Landry had been traveling over this road to her work in Epping for the past year. She was thoroughly familiar with the situation and knew that the law required her to give traffic on route 4 the right of way. Possessing this knowledge, she nevertheless drove forward a distance of 50 feet to the middle of the state highway without once looking in the direction from which Adams was approaching. Such conduct could fairly be deemed negligent. *Lafountaine* v. *Moore*, 90 N. H. 258, 260; *Fitzpatrick* v. *Parsons*, 90 N. H. 458.

Adams, on the other hand, had a right to assume that traffic entering route 4 from Madbury Road would obey the stop sign regulation and yield precedence to him. He too was driving to his work over a route with which he was familiar. He knew that he was approaching the intersection of Madbury Road and route 4 and that a stop sign was located there. The jury could properly find that his speed did not at any time exceed 45 miles an hour, which was the speed limit for that locality as determined by the Commissioner of Motor Vehicles under the authority of R. L., c. 119, s. 29.

He testified: "As I approached the intersection that morning I slowed down, took my foot off the throttle and slowed down, and when I glanced to my left there was nothing coming or in sight. . . . I slowed down between five and ten miles an hour; that would bring my speed down to thirty-five miles, in that vicinity." It is suggested that the Landry car may have been hidden from view behind the building and trees above referred to when he glanced to the left.

His further testimony tended to prove that Madbury Road, as it approaches the state highway from the west, declines rather sharply toward route 4 and, as it nears the intersection, spreads out into a triangular space from which two lanes extend in opposite directions, one curving toward Durham, the other toward Concord; that since there was a chance that a car might come down one of those curving lanes and turn into the road in front of him, he "wasn't looking straight ahead" as he drove on toward the intersection but was directing his gaze only "to a certain extent on the main thoroughfare."

His conduct is to be judged in the light of his knowledge of the existence of the stop sign (*Jackson* v. *Smart*, 90 N. H. 153, 155), and

the jury, giving due weight to that circumstance, might properly find that he paid as much attention to the intersection on his left as the average motorist would have paid under similar circumstances. *Bissonnette* v. *Chevrette*, 87 N. H. 211, 213. The issue of his care was for the jury. The motions for nonsuits and directed verdicts were correctly denied.

Mrs. Landry requested an instruction to the effect that contributory negligence on her part was not established "by mere proof that her car approached the intersection from the left and was in collision with a car approaching from the right." This request was not particularly pertinent, since the stop sign regulation giving all state-highway traffic precedence rendered inapplicable the "intersecting way" statute (R. L., c. 106, s. 3), on which the request was apparently based. See *Legere* v. *Buinicky*, *ante*, 71. Nevertheless, the Presiding Justice, after instructing the jury fully concerning the duty of Mrs. Landry in entering the intersection, granted the request in substance.

The motions to set aside the verdicts present no questions of law not already answered.

*Judgments on the verdicts.*

All concurred.